IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CRIMINAL NO. 05-40082-GPM |
| | ) |
| DEBORAH LUSTMAN, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

On December 2, 2005, an information was filed against Defendant Deborah Lustman charging her with mail fraud. That same day she waived arraignment and pleaded guilty to the offense charged. She and the Government entered a stipulation of facts, agreeing that her fraudulent conduct related to Defendant's ownership and operation of D.E.L.L. Family Development Corporation, d/b/a Admiral Child Development Center, in Carbondale, Illinois. The Center operated a day care center that received reimbursement from programs funded by the State of Illinois with funds ultimately provided by agencies of the federal government. She admitted to knowingly falsifying certain reports with respect to the child care program in the amount of approximately $25,000. (Doc. 5) On March 13, 2006, Ms. Lustman was sentenced to a one-year term of probation and ordered to pay a $500 fine, a $100 special assessment, and $25,000 in restitution payable to the United States Department of Agriculture. Before she was sentenced she had paid the entire agreed restitution.

The criminal case was not the only thing to result from the goings-on at the day care center. On June 17, 2002, two former employees, Angela Johnson and Jessica Maurizio, filed a *qui tam*

action under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, and the Illinois Whistleblower and Reward and Protection Act, 740 ILCS 175/1, against D.E.L.L. and Lustman for submitting false claims for child care and meals. *United States ex. rel. Angela Johnson and Jessica Maurizio v. D.E.L.L. Child Development Corporation and Deborah Lustman*, civil case no. 02-4123-JPG. After several extensions of the seal, the United States decided to intervene in the *qui tam* action, while the State of Illinois declined intervention. (Civil no. 02-4123-JPG at Docs. 27, 46) A scheduling and discovery order was entered, and the *qui tam* action was set for trial on January 30, 2006, before the Honorable J. Phil Gilbert (*Id*. at Doc. 50). However, during a status conference with Magistrate Judge Philip M. Frazier on November 15, 2004, the case was stayed on the United States' motion after counsel advised the Court that criminal proceedings were under consideration and that records were not available to them at that time to allow the civil matter to go forward (*Id*. at Doc. 53). To date, the stay has remained in place. Following another status conference before Magistrate Judge Frazier on April 6, 2006, the stay was continued, and a status conference is scheduled for August 3, 2006 (*Id*. at Doc. 63).

Before this Court is a motion filed by *qui tam* Relators Johnson and Maurizio to intervene in the criminal case (Doc. 21). They "desire to intervene in the instant action in order to make their rightful claim for an award from the recovery made by the Government through the criminal action against Lustman, as it constitutes an alternate remedy within the meaning of 31 U.S.C. § 3730(c)(5) and 740 ILCS 175/4(c)(5)." *Id*. at ¶ 13. The "alternate remedy" section of the False Claims Act provides, in pertinent part:

> [T]he Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such

> proceeding as such person would have had if the action had continued under this section. Any finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties to an action under this section. For purposes of the preceding sentence, a finding or conclusion is final if it has been finally determined on appeal to the appropriate court of the United States, if all time for filing such an appeal with respect to the finding or conclusion has expired, or if the finding or conclusion is not subject to judicial review.

31 U.S.C. § 3730(c)(5). Section 3730(c)(5) "protects original qui tam plaintiffs when the government chooses to pursue an alternate remedy." *United States ex. rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999). The question before this Court is whether the Government's prosecution of Lustman constitutes an "alternate remedy." Under the facts of this case, this Court concludes that it does not. Section 3730(c)(5) "assumes that the original qui tam action did not continue." *Id*. at 192; *accord United States ex. rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634, 647 (6th Cir. 2003) ("'alternate remedy' refers to the government's pursuit of any alternative to intervening in a relator's *qui tam* action"). The *qui tam* action is ongoing, even after the criminal judgment was entered.

Relators rely on *United States ex. rel. Barajas v. Northrop Corporation*, 258 F.3d 1004 (9th Cir. 2001), in which the Ninth Circuit Court of Appeals held that an administrative proceeding held by the Air Force to suspend or disbar a contractor from entering into contracts with the Department of Defense constituted an "alternate remedy" to a *qui tam* action under the False Claims Act. That Court took great care to explain and limit its holding to the particular facts of the case.

> In sum, we have the following sequence of events: the government first refused to intervene in Barajas' second action; then the government settled the first action, making it impossible for Barajas to proceed with that second action [because of claim preclusion]; finally, the government brought a suspension or debarment proceeding that allowed it to achieve essentially the same result it could have achieved by intervening in Barajas' second action. The notable consequence of this sequence is that the government now hopes to avoid paying Barajas the relator's share to which he would have been entitled if his second action had been permitted

> to go forward to a successful conclusion. Under these circumstances, we hold that the remedy achieved by the government in the Air Force Agreement is an alternate remedy within the meaning of the FCA.

*Id*. at 1012-13. Notably, in that case, Barajas, the relator, did not intervene in the criminal prosecution of Northrop Corporation that covered the claims Barajas asserted in his first and second *qui tam* actions. Rather, he filed a second civil action. Aside from some language regarding the policy behind *qui tam* actions, this Court does not find *Barajas* persuasive as applied to the facts of this case.

Relators also cite *United States v. Bisig*, Nos. 100CV335JDTWTL, 101CV0030JDTWTL, IP 02-CR-112-01-T/F, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005), to show that intervention in a criminal case is authorized. In that case, the district court held that when the United States declines to intervene in a *qui tam* action but seeks recovery of a defendant's assets through criminal forfeiture, the United States has engaged in an "alternate remedy" for purposes of § 3730(c)(5). *Id*. at *3. This case has no precedential value and is readily distinguishable from the facts presented by Relators Johnson and Maurizio.[1] Most importantly, in this case the United States has intervened in the *qui tam* action, and it is ongoing. Relators contend that the requested intervention is "solely to preserve their statutory rights to a relator's award" and that it "will not prejudice the United States or Lustman in the instant matter as the only remaining action required is the collection and disposition of Lustman's fines and restitution." (Doc. 21, ¶ 14). Relators' latter contention is

---

[1] This Court finds more persuasive the explanation given to the "alternate remedy" provision by the Sixth Circuit Court of Appeals after examining legislative history: "the government may either proceed judicially (by intervening in the *qui tam* suit) or pursue an alternative to judicial enforcement (i.e., an 'alternate remedy')." *United States ex. rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634, 648 (6th Cir. 2003). This Court does not read this to contemplate a criminal prosecution as an alternate remedy.

incorrect. In fact, all financial penalties have been paid and disbursed to the victim in this case. The Clerk of Court's finance department has revealed the following: Lustman's restitution was disbursed to the Department of Agriculture on April 4, 2006. Thus the facts in this case are easily distinguishable from those in *Bisig*, in which the relator moved to intervene and stay disbursement of assets in the criminal case before sentencing. Although that court did not dispose of the motion until after sentencing, the motion was made prior to sentencing. The court in *Bisig* limited its holding so that "the relator's right to participate as a party in the alternate proceeding only extends to the forfeiture proceeding, not to the entire criminal prosecution." 2005 WL 3532554 at *6. In this case there is no forfeiture proceeding, and Ms. Lustman's restitution has been disbursed. Simply put, there is nothing in which Relators can participate.

The purpose of a criminal prosecution is simply to determine whether the United States can sustain its burden of proof and, if necessary, determine an appropriate sentence for the defendant. This is the gravest and most consequential business of the Court. Surely Congress would have explicitly specified criminal prosecutions as an "alternate remedy" if it intended the result urged here.

For the foregoing reasons, Relators' motion to intervene (Doc. 21) is **DENIED**.

**IT IS SO ORDERED.**

DATED: 05/03/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge